UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-032-TBR

BOB ANDERSON,                                                                                    PLAINTIFF
*Administrator of the Estate of Charles Christopher McClure,
Deceased, and Next Friend of S.M., B.M., and C.M., Minor
Daughters of Mr. McClure*

v.

CITY OF FULTON, KENTUCKY, *et al.*                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions to dismiss by Defendants William Payne and Richard Sanders, [R. 27], John Tilley, [R. 28], and Michael Stacy, [R. 29]. Plaintiff Bob Anderson has responded to each motion to dismiss. [R. 31; R. 32; R. 33]. Defendants Payne and Sanders replied, [R. 34], as did Defendant Stacy, [R. 35]. The deadline for Defendant Tilley to reply has passed. This matter is now ripe for adjudication. For the reasons stated herein, Defendants William Payne and Richard Sanders's Motion to Dismiss, [R. 27], is **GRANTED**. Defendant John Tilley's Motion to Dismiss, [R. 28], is **GRANTED**. Defendant Michael Stacy's Motion to Dismiss, [R. 29], is **GRANTED.**

**BACKGROUND**

The factual allegations as set out in the First Amended Complaint, [R. 25], and taken as true are as follows.[1] On January 16, 2017, Charles McClure was allegedly experiencing mental health issues and began striking vehicles in Fulton, Kentucky with a 3'6" long square metal tube

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

1

with a knife affixed to it. [R. 25 at 3.] Fulton Police Chief Terry Powell arrived on the scene, followed by Lieutenant James Buckingham. [*Id*. at 4.] Anderson alleges that Buckingham shot McClure without warning, causing McClure to drop the pole and fall to the ground. [*Id*.] Anderson states that Buckingham then approached McClure and shot him a second time from "less than arm's length away" before McClure could stand up. [*Id*. at 5.] Anderson claims that all material events at the scene of the shooting were captured on Buckingham's bodycam. [*Id*.]

Lonnie Bell, a member of the Critical Incident Response Team ("CIRT"),[2] was assigned the task of investigating the shooting.[3] During the course of his investigation, Bell interviewed Powell, Buckingham, and Fulcher (another officer at the scene), reviewed the footage from Powell's dashcam, and reviewed the footage from Buckingham's bodycam. [*Id*. at 7.] Anderson claims that although the camera footage refutes any justification by the police officers for the fatal shooting, Bell nonetheless concluded that Mr. McClure "continued to swing the post at a police … officer in a threatening manner, which resulted in Mr. McClure being shot and killed by a police officer." [*Id*.] Bell then took the conclusions of his investigation to Commonwealth Attorney Michael Stacy, who presented the case to a Grand Jury. [*Id*.]

Anderson alleges that the Grand Jury was never informed of the camera footage or shown the footage, "despite Defendants Bell and Stacy's knowledge of its existence and what it showed." [*Id*.] Furthermore, Anderson alleges that Bell explicitly or implicitly made several,

---

[2] Anderson explains that the CIRT was "formed by KSP solely for the purpose of investigating police shootings." [R. 25 at 6.]

[3] In the First Amended Complaint, Anderson cites the opinions of three of the defendants on CIRT:

> According to Defendant Tilley, the purpose of the CIRT is to promote transparency and accountability when responding to police-related shootings. According to Defendant Sanders, the CIRT is composed of "six of the best investigators KSP has to offer", which presumably includes Defendant Bell. Defendant Payne said that the KSP "want[s]... people to have the confidence in us that we have our best people doing those investigations."

[*Id*. at 6-7.]

factual misrepresentations to the Grand Jury about what occurred at the scene. [*Id*. at 8.] Anderson alleges that Stacy "made no effort to correct these misrepresentations to the Grand Jury," and the one-sided misrepresentation of evidence by Bell and Stacy essentially caused the Grand Jury to find that there was no activity involved in McClure's death that warranted prosecution. [*Id*.]

Anderson states that he "believes, and anticipates that he will be able to prove in discovery, that there exists a custom and practice of covering up unwarranted shootings of unarmed Kentucky citizens that pervades the culture of the Fulton Police, the KSP, and the office of the Commonwealth Attorney of Fulton County," which "effectively encourages unwarranted police shootings." [*Id*.] On October 4, 2018, Anderson filed the First Amended Complaint, in which he alleged eight causes of action, including "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office, against nine defendants. [*Id*. at 9-11.][4]

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v.*

---

[4] The Court notes that the cause of action for perjury is only alleged against defendants Stacy, Tilley, Payne, and Bell. [*See* R. 25 at 11.]

3

*Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

In response to Anderson's First Amended Complaint, four of the defendants have filed motions to dismiss, all pursuant to Federal Rule of Civil Procedure 12(b)(6). Although the motions involve four defendants, there are only three motions, as Sanders and Payne (hereinafter "the Commissioners") jointly filed a motion to dismiss, [R. 27]. The Court will address each motion in turn.

### I. Sanders and Payne Motion to Dismiss

As an initial matter, the Court recognizes Anderson's observation that the Commissioners have relied on matters outside the pleadings in arguing that their specific positions with Kentucky State Police ("KSP") do not allow direct supervision over Bell. [R. 31 at 1 (Anderson Response to Commissioners).] For example, the Commissioners reasoned in their Motion to

Dismiss that Sanders and Payne would not have supervised Bell because they "are not direct supervisors of any Lieutenants." [R. 27-1 at 7.] Furthermore, the Commissioners stated:

> Commissioner Sanders and Dep. Commissioner Payne were, at all times relevant to this action, in overall command of more than 850 sworn police officers and approximately 900 civilian employees. There is no conceivable situation in which the Commissioner or Deputy Commissioner could have been in direct supervision of Lieutenant Bell. It must also be understood that a State Police Trooper is an independent unit. He is trained to make independent, discretionary judgment calls and has to be free to do that. There are very few situations in which a Trooper will be under the direct supervision of anyone.

[*Id*. at 7-8.]

Federal Rule of Civil Procedure 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). This decision rests within the discretion of the district court, which "remains free to *refuse to accept* materials outside the pleadings." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1371 (3d ed. 2004)). Here, the statements by the Commissioners claiming Sanders and Payne had no direct supervision over Bell due to their position in the hierarchy of KSP involve matters outside the pleadings. Thus, these statements are excluded and were not considered by the Court, and this motion remains one to dismiss, rather than a motion for summary judgment.

In his First Amended Complaint, Anderson alleges against the Commissioners claims of "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office. [R. 25 at 9-11.] Anderson states that the

Commissioners were "responsible for the establishment of policies either formally or by custom for, and [were] responsible for the employment, training, supervision and conduct of, Defendant Bell, or those responsible for the employment, training, supervision and conduct of, Defendant Bell." [*Id*. at 3.][5] Under the section labeled "Nature of Defendants' Conduct," Anderson alleges the following in regard to all nine defendants as a group:

> Defendants, individually and in conspiracy with one another, engaged in the misconduct described above under color of the law of the Commonwealth of Kentucky, and knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized, approved, or ratified such misconduct. This misconduct described above resulted from the failure of Defendants to employ qualified persons for positions of authority, and/or to properly and conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate policies and procedures either formally or by custom to protect the constitutional rights of citizens like Mr. McClure whom they are sworn to protect, and/or to implement, follow, and enforce existing policies and procedures that would have prevented Mr. McClure's death. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. McClure and others like him and a total, deliberate and reckless disregard for and indifference to his life, his constitutional and common law rights and those of his estate and minor daughters, and to the principles of transparency and accountability in law enforcement, and justifies an award of actual and punitive damages.

[*Id*. at 8-9.] However, in the facts section, the Commissioners are scarcely mentioned. In fact, they are only mentioned in the following passage:

> Investigation of the shooting was assigned to Defendant Lonnie Bell. Defendant Bell is a member of the Critical Incident Response Team ("CIRT") formed by KSP solely for the purpose of investigating police shootings. According to Defendant Tilley, the purpose of the CIRT is to promote transparency and accountability when responding to police-related shootings. According to Defendant Sanders, the CIRT is composed of "six of the best investigators KSP has to offer", which presumably includes Defendant Bell. Defendant Payne said that the KSP "want[s] . . . people to have the confidence in us that we have our best people doing those investigations."

[*Id*. at 6-7.]

---

[5] Anderson alleges Sanders was also responsible for the "employment, training, supervision and conduct of" Payne. [R. 25 at 2-3.]

6

### A. Federal Law Claims

The Commissioners argue that Anderson's violation of Fourth, Fifth, Eighth,[6] and Fourteenth Amendment claims should be dismissed because Commissioners are entitled to qualified immunity under federal law, [R. 27-1 at 9], and/or Anderson's claims fail as a matter of law, [*Id*. at 11].

Although it is not entirely clear from the First Amended Complaint, Anderson appears to allege supervisory liability. [*See* R. 25 at 3.] The Sixth Circuit has stated:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal citations omitted). Furthermore, "[a]s part of this inquiry, this court also considers whether there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Id*.

In considering qualified immunity at the motion to dismiss stage of litigation, the Sixth Circuit has stated:

> The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). However, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id.* at 238–39, 129 S.Ct. 808 (citation omitted). Thus, we have held that it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," preferring instead that courts resolve the issue at summary judgment.

---

[6] The Court notes that even if it were to consider Anderson's federal law claims, the Eighth Amendment would not apply to Mr. McClure as the "Eighth Amendment applies to convicted prisoners." *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002).

7

*Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). The Court goes on to say that "certain immunity questions can still be resolved at the pleading stage with a sufficiently developed record," such as when there are "exhibits attached to the complaint, public records, [and] items appearing in the record of the case." *Id*. Here, however, there are no such records before the Court.

Even if Anderson's federal law claims are not barred by qualified immunity, the Court finds that it may still grant a motion to dismiss for failure to state a claim under Rule 12(b)(6). Here, Anderson makes no mention of supervisor liability under the § 1983 cause of action in the First Amended Complaint. [*See* R. 25 at 9-10.] However, in his Response, Anderson claims that Bell lied to a Grand Jury without consequences, which "would evidence at least the implicit approval or the knowing acquiescence of Bell's superiors, Payne and Sanders, in his misconduct." [R. 31 at 5.] Anderson then argues that the generic quotes listed from Sanders and Payne show their "direct involvement in the creation of the CIRT." [R. 31 at 3.] The Commissioners retort that this amounts to conclusory allegations. The Court agrees with the Commissioners.

Although Anderson claims broadly that all of the defendants, including Sanders and Payne, "knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized, approved, or ratified" the conduct contained in the facts, [R. 25 at 8-9], these amount to labels and conclusions that cannot defeat a motion to dismiss alone. *Iqbal*, 556 U.S. at 679. Anderson must provide factual allegations that allow the Court to make the reasonable inference that the Commissioners "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross*, 818 F.3d at 242. Granted, the quotes listed from Payne and Sanders seem to show that they knew of and supported CIRT in its mission to gain the

8

public's confidence in the investigatory abilities of KSP. This knowledge combined with the conclusory statements quoted above may show a "possibility of misconduct," but that is not enough to survive a motion to dismiss. *Iqbal*, 556 U.S at 679. Thus, the Commissioners' Motion to Dismiss as it pertains to Anderson's Fourth, Fifth, Eighth, and Fourteenth Amendment violation claims is GRANTED.[7]

B. **State Law Claims**

The Supreme Court has stated: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Furthermore, it is a matter of this Court's discretion whether to hear supplemental jurisdiction state law claims. *Experimental Holdings, Inc.*, 503 F.3d at 521. Here, the Court finds that "the interests of judicial economy and the avoidance of multiplicity of litigation" do not "outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Thus, the Court declines to exercise supplemental jurisdiction over Anderson's state law claims against Payne and Sanders.

In summary, the Commissioners' Motion to Dismiss is GRANTED.

---

[7] In his Response, Anderson also argues that the Commissioners are liable under federal law for "ratifying" the actions of Bell and Buckingham. [R. 31 at 5-6.] In support, Anderson cites to *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118-19 (6th Cir. 1994), and *Arendale v. City of Memphis*, 519 F.3d 587, 602 (6th Cir. 2008). These three cases involve municipal liability, not individual liability, which is what Anderson appears to be pleading in the issue before us—as he references the standard for personal liability in his Response. [R. 31 at 5.] The Sixth Circuit has stated that "a § 1983 claim of personal liability for a failure to train and supervise differs from a § 1983 claim against a municipality for a failure to train and supervise." *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 541 (6th Cir. 2015). Thus, it appears that Anderson's ratification argument is inapplicable to the issue at hand.

## II. Tilley Motion to Dismiss

Anderson's claims against Tilley are almost exactly the same as the claims against the Commissioners. Against Tilley, Anderson alleges claims of "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office. [R. 25 at 9-11.] Similar to the Commissioners, Anderson alleges that Tilley was "responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, Defendants Sanders, Payne, and Bell, or those responsible for the employment, training, supervision and conduct of, Defendant Bell." [*Id*. at 2-3.] In the facts section of the First Amended Complaint, Tilley is only briefly mentioned in the same paragraph as the Commissioners. Specifically, it stated: "According to Defendant Tilley, the purpose of the CIRT is to promote transparency and accountability when responding to police-related shootings." [*Id*. at 6.]

Tilley argues in his Motion to Dismiss that "the factual allegations regarding John Tilley do not meet even the liberal standard of notice pleading for any of the claims asserted by the Plaintiffs." In response, Anderson recycles the exact same arguments—in most places word for word—from his Response to the Commissioners' Motion to Dismiss. [*See generally* R. 31; R. 32.] The only factual differences between the claims are the positions of the parties at KSP and the statement attributed to each party concerning CIRT. Unlike the quotes from the Commissioners, the statement attributed to Tilley does not appear to be a direct quote, as it is not contained within quotation marks. Even so, like the quotes from the Commissioners, the Court finds that this isolated statement alone does not allow the court to draw the reasonable inference that the defendant is liable for supervisor liability. Furthermore, the Court once again notes that

Anderson never mentions a claim of supervisor liability in his First Amended Complaint. As neither the federal law claims within the First Amended Complaint nor the arguments of the Response have materially changed, Tilley's Motion to Dismiss is GRANTED as it pertains to Anderson's Fourth, Fifth, Eighth, and Fourteenth Amendment violation claims under the same reasoning provided above regarding the claims against the Commissioners.

Also, as explained above, the Court finds that "the interests of judicial economy and the avoidance of multiplicity of litigation" do not "outweigh our concern over needlessly deciding state law issues." *Moon*, 465 F.3d at 728. Thus, the Court declines to exercise supplemental jurisdiction over Anderson's state law claims against Tilley.

### III.  Stacy Motion to Dismiss

Like the defendants mentioned above, Anderson alleges claims of "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office against Stacy as well. [R. 25 at 9-11.] Anderson states that Stacy was "at all times mentioned herein the Commonwealth Attorney for Fulton County, and personally engaged in the misconduct described" in the First Amended Complaint. [*Id*. at 3.] In the facts section, Anderson describes Stacy's actions as follows: "Defendant Bell then took the conclusions of his 'investigation' to Defendant Commonwealth Attorney Stacy, who presented the case to the Grand Jury. However, the Grand Jury was not informed of the existence of or shown the footage from Defendant Buckingham's bodycam despite Defendants Bell and Stacy's knowledge of its existence and what it showed." [*Id*. at 7.] Additionally, Anderson alleges that despite Bell making misrepresentations to the Grand Jury, "Stacy made no effort to correct these

misrepresentations to the Grand Jury," causing a "one-sided misrepresentation of the evidence" that favored the defendants. [*Id*. at 8.]

### A. Federal Law Claims

Stacy argues that Anderson's claims under § 1983 are barred by absolute prosecutorial immunity because "Stacy was acting as the Commonwealth's Attorney for the First Judicial Circuit at all times in question . . .." [R. 29-1 at 7 (Stacy Motion to Dismiss).] Anderson disagrees. [R. 33 at 4 (Anderson Response to Stacy).]

A prosecutor is afforded absolute immunity from § 1983 suits for damages when he acts "within the scope of his prosecutorial duties." *Imbler v. Pachtman,* 424 U.S. 409, 420 (1976); *Grant v. Hollenbach,* 870 F.2d 1135, 1137 (6th Cir. 1989). "Absolute immunity allows a prosecutor to exercise his independent judgment in 'deciding which suits to bring and in conducting them in court' based on his duty to the public rather than on a fear of potential liability in a suit for damages." *Id.* (internal citations omitted). Absolute immunity is granted when the "challenged activities [were] an integral part of the judicial process." *Imbler,* 424 U.S. at 430.

The Supreme Court has established a functional approach for determining whether government officials enjoy absolute immunity or the more general standard of qualified immunity. *Id.* at 486. The court must determine "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates.'" *Buckley v. Fitzsimmons,* 509 U.S. 259, 274 (1993). State prosecutors enjoy absolute immunity for their conduct "in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Burns,* 500 U.S. at 479 (internal quotation marks and citations omitted). "[A] prosecutor's decision to initiate a prosecution, including the decision

to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) (citing *Imbler,* 424 U.S. at 430–31); *see also Buckley,* 509 U.S. at 273 (noting that a prosecutor's actions in evaluating evidence and preparing for presentation at trial or to a grand jury is protected by absolute immunity). Furthermore, the Sixth Circuit has stated:

> Absolute immunity also protects a prosecutor when she evaluates evidence and presents that evidence at trial or before a grand jury, prepares witnesses for trial, and even elicits false testimony from witnesses. By shielding prosecutors engaging in these activities, absolute immunity "serves the policy of protecting the judicial process."

*Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (internal citations omitted). Conversely, the Sixth Circuit also held:

> Only qualified immunity is available to prosecutors when they perform "investigative" or "administrative" functions unrelated to judicial proceedings. Investigative acts outside the scope of absolute immunity include giving legal advice to the police during a pretrial investigation, conspiring to fabricate evidence during the time before convening a grand jury, and making false statements at a press conference.

*Id*. (internal citations omitted).

Here, Anderson alleges that Stacy presented the case to the Grand Jury and, during that presentation, failed to show the footage from Buckingham's bodycam or correct the misrepresentations made by Bell. [R. 25 at 7-8.] The Court finds that these allegations amount to presenting evidence and eliciting testimony; in other words, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State . . .." *Buckley*, 509 U.S. at 273. Moreover, courts have found that both types of actions fall under prosecutorial immunity. Regarding Stacy's alleged failure to show bodycam footage, the Sixth Circuit has stated that "prosecutors have absolute immunity from civil liability for the non-disclosure of exculpatory information at trial." *Koubriti v.*

13

*Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Imbler,* 424 U.S. at 431 n. 34). As for Stacy's alleged failure to correct misrepresentations made by Bell, the Supreme Court in *Burns* found the respondent to be protected by prosecutorial immunity, stating: "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." 500 U.S. at 489–90. Therefore, the Court finds that Stacy is entitled to the protections of prosecutorial absolute immunity regarding all of Anderson's federal law claims.

### B. State Law Claims

Like federal courts, state courts in Kentucky offer absolute immunity and qualified immunity to prosecutors, depending on the circumstances. In *McCollum v. Garrett*, the Supreme Court of Kentucky relied on the findings of the United States Supreme Court in *Buckley*, *Imbler*, and *Burns*, in holding that a prosecutor is entitled to absolute immunity when he is "acting within the scope of his authority," but not when he "functions as an administrator or investigator." *McCollum*, 880 S.W.2d 530, 534 (Ky. 1994). As Kentucky law mirrors federal law in this area, the absolute immunity analysis conducted above on Anderson's federal claims also applies to Anderson's state claims. *See, e.g., Hall v. City of Williamsburg, Kentucky*, No. 6:16-304-DCR, 2017 WL 2274327, at *13 (E.D. Ky. 2017) ("Because Kentucky law appears to be based on and mirrors federal law, the absolute immunity analysis conducted above on [plaintiff]'s federal claims also applies to [plaintiff]'s state claims"). The Court finds that Stacy was acting as an advocate when presenting evidence and eliciting testimony before the Grand Jury. Furthermore, none of the allegations in the First Amended Complaint of Stacy's misconduct amount to actions taken in an investigative or administrative capacity. *See, e.g., Burns*, 500 U.S. at 494-96 (finding

that giving legal advice to the police during a pretrial investigation is an investigative act); *Buckley*, 509 U.S. 274-78 (finding that conspiring to fabricate evidence during the time before convening a grand jury and making false statements at a press conference are investigative acts). Thus, the Court finds that Stacy is entitled to the protections of prosecutorial absolute immunity regarding all of Anderson's state law claims.

Therefore, Stacy's Motion to Dismiss is GRANTED.[8]

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendants William Payne and Richard Sanders's Motion to Dismiss, [R. 27], is **GRANTED**.

2. Defendant John Tilley's Motion to Dismiss, [R. 28], is **GRANTED**.

3. Defendant Michael Stacy's Motion to Dismiss, [R. 29], is **GRANTED.**

4. Defendants Payne, Sanders, Tilley, and Stacy are **DISMISSED** from this action as there are no more claims remaining against them. The Clerk of Court is **DIRECTED** to remove Defendants Payne, Sanders, Tilley, and Stacy from the docket of this action.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 26, 2018

cc: Counsel of Record

---

[8] The Court finds it unnecessary to engage in further analysis of Anderson's other arguments at this time as it has dismissed the claims based on absolute prosecutorial immunity.