UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-032-TBR

BOB ANDERSON, PLAINTIFF
*Administrator of the Estate of Charles Christopher McClure,
Deceased, and Next Friend of S.M., B.M., and C.M., Minor
Daughters of Mr. McClure*

v.

CITY OF FULTON, KENTUCKY, *et al.* DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Lonnie Bell's Motion to Dismiss. [R. 50.] Plaintiff Bob Anderson responded, [R. 51], and Bell replied, [R. 52]. Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, Bell's Motion to Dismiss, [R. 50], is **GRANTED**.

## BACKGROUND

The general factual background of this case can be found in the Court's previous Memorandum Opinion and Order from November 28, 2018, [R. 41.] The Motion to Dismiss before the Court solely involves the claims against Lonnie Bell, a member of the Critical Incident Response Team ("CIRT"),[1] who was assigned the task of investigating the shooting at issue.[2] During the course of his investigation, Bell interviewed Fulton Police Chief Terry Powell,

---

[1] Anderson explains that the CIRT was "formed by KSP solely for the purpose of investigating police shootings." [R. 25 at 6.]

[2] In the First Amended Complaint, Anderson cites the opinions of three of the defendants on CIRT:

> According to Defendant Tilley, the purpose of the CIRT is to promote transparency and accountability when responding to police-related shootings. According to Defendant Sanders, the CIRT is composed of "six of the best investigators KSP has to offer", which presumably includes

1

Lieutenant James Buckingham, and Fulcher (another officer at the scene), reviewed the footage from Powell's dashcam, and reviewed the footage from Buckingham's bodycam. [*Id*. at 7.] Anderson states that although the camera footage refutes any justification by the police officers for the fatal shooting, Bell nonetheless concluded that Mr. McClure "continued to swing the post at a police … officer in a threatening manner, which resulted in Mr. McClure being shot and killed by a police officer." [*Id.*] Bell then took the conclusions of his investigation to Commonwealth Attorney Michael Stacy, who presented the case to a Grand Jury. [*Id.*] Anderson alleges that Bell explicitly or implicitly made several, factual misrepresentations to the Grand Jury about what occurred at the scene. [*Id*. at 8.] Further detail concerning Bell's grand jury testimony can be found in the discussion below.

On October 4, 2018, Anderson filed the First Amended Complaint, in which he alleged eight causes of action, including "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office, against nine defendants. [*Id*. at 9-11.][3]

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of

---

Defendant Bell. Defendant Payne said that the KSP "want[s]... people to have the confidence in us that we have our best people doing those investigations."

[*Id*. at 6-7.]
[3] The Court notes that the cause of action for perjury is only alleged against defendants Stacy, Tilley, Payne, and Bell. [*See* R. 25 at 11.]

wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

In the Amended Complaint, Bell is included amongst the listed defendants for Anderson's claims of "[v]iolation of Fourth, Fifth, Eighth, and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983," "negligence/gross negligence," battery, wrongful death, loss of consortium, hindrance of prosecution, perjury, and abuse of public office. [R. 25 at 9-11.] In response to Anderson's § 1983 claim, amongst other arguments, Bell maintains that he is entitled to absolute immunity. [R. 50 at 5.] As for the state claims asserted against him, Bell argues that

3

Anderson has failed to state a claim. [*Id*. at 14-18.] The Court will address each of these issues in turn.

   I.   **Absolute Immunity for Grand Jury Testimony**

In his Motion to Dismiss, Bell asserts that he is absolutely immune from Anderson's § 1983 claim against him as it is based on his testimony in front of the Grand Jury. [R. 50 at 5-6.] In the Amended Complaint, Anderson claims that after Bell investigated the incident involving McClure's fatal shooting:

> Defendant Bell explicitly or implicitly misrepresented to the Grand Jury the following:
>
> a. That there were attempts made to "subdue" Mr. McClure before he was shot;
>
> b. That Mr. McClure, when he struck the front windshield of Defendant Powell's SUV with the pipe he was carrying, was trying to strike Defendant Powell and not just his windshield;
>
> c. That when Defendant Buckingham exited his vehicle, he walked to the back of his vehicle, whereupon Mr. McClure broke the back windshield of Defendant Buckingham's vehicle and then "raised the pipe in a threatening manner," whereupon he was shot the first time by Defendant Buckingham;
>
> d. That after Mr. McClure was shot the first time, he was "kicking" and keeping his hands "hidden";
>
> e. That given Defendant Buckingham's "close proximity" to Mr. McClure, Mr. McClure's "weapon" and "what he was electing to do with it", there were no options available to Defendant Buckingham other than to shoot Mr. McClure;
>
> f. That had Defendant Buckingham failed to subdue Mr. McClure with a non-lethal force alternative such as a taser, he would have been left helpless in the face of a lethal risk;
>
> g. That "the first shot did not stop" Mr. McClure;
>
> h. That the knife was "just inches away" from Mr. McClure when he was shot the second time; and

> i. That if Defendant Buckingham didn't shoot Mr. McClure, a private citizen at the scene who was a Viet Nam [sic] veteran and had a carry license would probably have done it himself.

[R. 25 at 8.] Bell argues that "[m]isstatements and even outright lies to the grand jury would not support a claim under 42 U.S.C. § 1983." [R. 50 at 5.] The Court agrees that Bell is entitled to absolute immunity concerning his grand jury testimony.

The United States Supreme Court has stated: "grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Additionally, "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* This is because, "[w]ere it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)). Here, the factual allegations in the Amended Complaint that support Anderson's § 1983 claim revolve around Bell's grand jury testimony. Therefore, Bell has absolute immunity from any § 1983 claim based on his grand jury testimony. The Court acknowledges Anderson's argument that "Bell's misconduct was not the product of a split-second decision on his part after taking the stand" but was part of "a cover-up conceived beforehand." [R. 51 at 3-4.] However, as explained above, Anderson may not circumvent the rule of absolute immunity for grand jury testimony by "claiming that a grand jury witness conspired to present false testimony . . . ." *Rehberg*, 566 U.S. at 369. Thus, the Court finds that Bell enjoys absolute immunity and Anderson's § 1983 claim against him shall be dismissed.

In response, Anderson essentially provides three arguments why he believes this assessment of absolute immunity is false. First, Anderson argues that despite Bell's claim of immunity, he still has a cause of action for "denial of due process and access to the courts under the Fourteenth Amendment where law enforcement officers intentionally engaged in a cover-up 'that interfered with [the plaintiff's] exercise of [his] constitutionally protected right to institute a wrongful death suit.'" [R. 51 at 4 (citing *Ryland v. Shapiro,* 708 F.2d 967, 971-73 (5th Cir. 1983)).] In support of this assertion, Anderson cites to the Fifth Circuit's findings in *Ryland v. Shapiro*, in which the court held that two prosecutors were not entitled to prosecutorial immunity when they acted outside their roles as prosecutors by falsifying a death certificate and covering up a murder for eleven months. *Ryland,* 708 F.2d at 975. As highlighted by Bell in his Reply, [R. 52 at 2], this case did not involve the immunity of a grand jury witness. Thus, *Ryland*, is easily distinguishable from the matter at hand. Furthermore, the precedent of the Fifth Circuit is not binding on this Court.

Second, Anderson implies that immunity does not prohibit his claim due to the Fifth Circuit's finding that "if state officers conspire . . . in such a way as to defeat *or prejudice* a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law." [R. 51 at 4 (quoting *Dinwiddie v. Brown,* 230 F.2d 465, 469 (5th Cir.), *cert. denied,* 351 U.S. 971 (1956)).] Besides the fact that this case law is over fifty years old and not binding on this court, it is also distinguishable from the matter at hand. Once again, the Fifth Circuit's findings in *Dinwiddie* do not concern the issue of immunity; thus, it is inapplicable to the case before the Court.

Lastly, Anderson argues that he is "entitled to at least file suit and pursue discovery to determine whether Bell's misconduct has rendered this action ineffective in compensating the

injuries to Mr. McClure's estate and minor children." [R. 51 at 5.] In support of this assertion, Anderson cites to the Sixth Circuit case of *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997). In *Swekel*, the Sixth Circuit affirmed the dismissal of a § 1983 claim arguing that the defendants denied the plaintiff access to the courts when the plaintiff failed to present evidence that the defendants' actions rendered a state court remedy ineffective. *Id*. Unlike the matter at hand, *Swekel* did not involve the issue of absolute immunity for grand jury testimony. Thus, *Swekel* is not applicable in this circumstance.

In conclusion, the Court finds that Bell has absolute immunity from any § 1983 claim based on his grand jury testimony. As the factual allegations in the Amended Complaint that support Anderson's § 1983 claim revolve around Bell's grand jury testimony, Anderson's § 1983 claim against Bell is dismissed. Bell's Motion to Dismiss, [R. 50], as it pertains to Anderson's § 1983 claim, is GRANTED.

**II.     State Law Claims**

Remaining before the Court are the following claims: battery,[4] negligence/gross negligence, wrongful death, and loss of consortium.[5] Beyond the factual allegations produced above, the Amended Complaint provides no allegations specific to Bell regarding the various remaining state law claims. Instead, the Amended Complaint contains generic conclusions regarding all the defendants listed in the case. Following Anderson's recounting of Bell's grand jury testimony, the Amended Complaint states:

> 22. Plaintiff believes, and anticipates that he will be able to prove in discovery, that there exists a custom and practice of covering up unwarranted shootings of

---

[4] Anderson also listed a claim of excessive force along with these claims in his response. [R. 51 at 5.] However, in the Amended Complaint, the claim of excessive force was listed under his § 1983 cause of action, which has been dismissed. [R. 25 at 9-10.]

[5] As Anderson "does not object to the dismissal of his claims against Bell for perjury, hindrance of prosecution, or abuse of public office," [R. 51 at 5], those claims are DISMISSED.

7

> unarmed Kentucky citizens that pervades the culture of the Fulton Police, the KSP, and the office of the Commonwealth Attorney of Fulton County. This culture effectively encourages unwarranted police shootings to the detriment of Kentucky citizens (such as Mr. McClure) and the public interest, and immunizes the type of "shock-the-conscience" misconduct that underlies this case.

[R. 25 at 8.] Directly following this assertion, the Amended Complaint provides:

> 23. Defendants, individually and in conspiracy with one another, engaged in the misconduct described above under color of the law of the Commonwealth of Kentucky, and knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized, approved, or ratified such misconduct. This misconduct described above resulted from the failure of Defendants to employ qualified persons for positions of authority, and/or to properly and conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate policies and procedures either formally or by custom to protect the constitutional rights of citizens like Mr. McClure whom they are sworn to protect, and/or to implement, follow, and enforce existing policies and procedures that would have prevented Mr. McClure's death. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. McClure and others like him and a total, deliberate and reckless disregard for and indifference to his life, his constitutional and common law rights and those of his estate and minor daughters, and to the principles of transparency and accountability in law enforcement, and justifies an award of actual and punitive damages.

[*Id*. at 8-9.] It is unclear to the Court how either of these generic assertions concerning all of the defendants together relates to the four remaining claims as they relate to Bell. Furthermore, the individual causes of action, as listed in the Amended Complaint, provide little assistance:

> **B. Negligence/Gross Negligence (against the individual Defendants)**
>
> 28. By virtue of the foregoing, the individual Defendants, individually and in conspiracy with one another, were negligent and grossly negligent.
>
> **C. Battery (against the individual Defendants)**
>
> 29. By virtue of the foregoing, the individual Defendants, individually and in conspiracy with one another, battered Mr. McClure.
>
> **D. Wrongful Death (against the individual Defendants)**

30. By virtue of the foregoing, Mr. McClure's estate is entitled to recover from the individual Defendants for his wrongful death pursuant to KRS 411.130.

**E. Loss of Consortium (against the individual Defendants)**

31. By virtue of the foregoing, Mr. McClure's minor daughters, S.M., B.M., and C.M., are entitled to recover from the individual Defendants for the loss of their father's love, support, society and companionship.

[R. 25 at 10.] The Supreme Court has stated that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' *Id.* The Court finds that, at best, these limited factual allegations, along with the broad, conclusory statements mentioned, support no "more than the mere possibility of misconduct." *Id.* at 679.[6]

Anderson attempts to bring some specificity to the group of claims in his Response by stating, in reference to all four claims, "Plaintiff is not claiming that Bell participated in the killing of Mr. McClure; Plaintiff is claiming that Bell participated in a conspiracy of cover-up that led Buckingham to believe he could kill Mr. McClure with impunity." [R. 51 at 5.] Still, absent from Anderson's Response is any factual allegation as to how Bell participated in a "conspiracy of cover-up," or any explanation as to how this conspiracy relates to the four remaining causes of action. The only case Anderson cites in support of these assertions is *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997), in which the Sixth Circuit explained that "there are

---

[6] The Court acknowledges that it declined to exercise supplemental jurisdiction over the state claims against defendants William Payne, Richard Sanders, and John Tilley in its previous Memorandum Opinion and Order. [R. 41 at 9; 11.] However, the circumstances surrounding the claims against Bell prove to be quite different. Here, the state claims are factually and legally intertwined with Anderson's explanation behind his federal claim: that Bell was a part of a "conspiracy . . . to cover up instances of unwarranted police shootings and immunize guilty officials from the consequences of their misconduct," [R. 51 at 3]. *See McKenzie v. City of Detroit*, 74 F. App'x 553, 556 (6th Cir. 2003) (finding, in part, that a district court did not abuse its discretion when it exercised supplemental jurisdiction over state claims that were both "factually and legally intertwined" with the plaintiff's federal claim). Furthermore, the Court finds, in its discretion, that the interests of judicial economy and fairness weigh against requiring the parties to make these same arguments once again in state court. *Id.*; *see also Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force." However, the case did not involve absolute immunity for grand jury testimony. As explained above, the Court has already denied Anderson's claim of excessive force under his § 1983 claim due to absolute immunity. Thus, Anderson's further arguments in his Response do not save his claims against Bell.

As an alternative argument, at the end of his Response, Anderson asserts that if "the Court believes there still exists a deficiency in Plaintiffs' Original or the tendered First Amended Complaint that renders it vulnerable to dismissal, it 'must permit a curative amendment, unless an amendment would be inequitable or futile.'" [R. 51 at 6 (quoting *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).]. Although a request to amend should normally be freely given under Federal Rule of Civil Procedure 15(a), the Sixth Circuit has held that "an informal request contained in a brief in opposition to a motion to dismiss is not deemed a Rule 15 motion to amend." *Gonzalez v. Kovacs*, 687 F. App'x 466, 470 (6th Cir. 2017) (citing *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000)). In *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671 (6th Cir. 2004), the Sixth Circuit explained:

> In this case, Plaintiffs failed to follow the proper procedure for requesting leave to amend. They did not actually file a motion to amend along with an accompanying brief, as required by the local rules governing practice before the district court. Instead, they simply included the following request in their brief opposing the Defendants' motions to dismiss: "Alternatively, in the event the Court grants any part of the Defendants' motions to dismiss, plaintiffs respectfully request leave to amend their Complaint." As the D.C. Circuit has found, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, cf. Federal Rule of Civil Procedure 7(b)- does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n v. Hines,* 995 F.2d 295, 299 (D.C.Cir.1993), quoted in *D.E.&J. Ltd. P'ship v. Conaway,* 284 F.Supp.2d 719, 751 (E.D.Mich.2003). This Court's disfavor of such a bare request in lieu of a properly filed motion for leave to amend was made clear in *Begala v. PNC Bank, Ohio, N.A.,* 214 F.3d 776, 784 (6th Cir.2000): "What plaintiffs may have stated, almost as an aside to the district

court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend." As the *Begala* decision reasoned in affirming the district court's dismissal of the plaintiff's complaint with prejudice in that case,

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint. . . . Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.

*PR Diamonds, Inc.,* 364 F.3d at 699. Under these circumstances, the Court finds that it has no obligation to grant Anderson's informal request to amend. *Gonzalez*, 687 F. App'x at 470. Furthermore, considering that the complaint has already been amended once and the Motion to Dismiss was filed in April, the Court finds that Anderson had plenty of opportunities to file a motion to amend his complaint.

In conclusion, the Court finds that Anderson has failed to state a claim regarding his four remaining causes of action. Therefore, Bell's Motion to Dismiss, [R. 50], as it pertains to the remaining causes of action, i.e., battery, negligence/gross negligence, wrongful death, and loss of consortium, is GRANTED.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Bell's Motion to Dismiss, [R. 50], is **GRANTED**. As Bell is entitled to absolute immunity regarding Anderson's § 1983 claim, Anderson's § 1983 claim is dismissed with prejudice. Moreover, as Anderson conceded to the dismissal of his claims against Bell for perjury, hindrance of prosecution, and abuse of public office, those claims are also dismissed with prejudice. Anderson's remaining claims of battery,

negligence/gross negligence, wrongful death, and loss of consortium are dismissed without prejudice.

Defendant Bell is DISMISSED from this action as there are no more claims remaining against him. The Clerk of Court is DIRECTED to remove Defendant Bell from the docket of this action.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 29, 2019

cc: Counsel of Record